IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TINA M JESSUP,

    Plaintiff,

v.                                                                     CASE NO. 1:14-cv-92-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for supplemental security income pursuant to Title XVI of the Social Security Act (the Act). (Doc. 1.) The Commissioner has answered, and both parties have filed briefs outlining their respective positions. (Docs. 17, 19.) For the reasons discussed below, it is respectfully recommended that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively applied for SSI in March 2010, alleging disability beginning October 2008 due to rheumatoid arthritis (RA), vein problems in legs, depression, and migraines. R. 121. Her applications were denied initially and upon reconsideration. R. 35-37, 112-13, 116-118. A hearing and supplemental hearing were held before an Administrative Law Judge (ALJ) in May and September 2012, at which Plaintiff, a

medical expert, and a vocational expert (VE) testified.[1]  R. 467-484, 485-510.  The ALJ determined that Plaintiff had the medically determinable impairments of RA, peripheral neuropathy, and osteoarthritis, but that she did not have an impairment or combination of impairments that met the listings.  R. 16.  The ALJ determined that Plaintiff's medically determinable impairment of depression and history of adjustment disorder were non-severe.  *Id*. at 15.  The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work with certain exertional limitations, and utilized the testimony of the VE to determine that there were jobs in the national economy that Plaintiff could perform.   R. 21-22.  The Appeals Council denied Plaintiff's request for review.  R. 5-7.  The instant appeal followed.

Plaintiff raises three issues for appeal: whether the ALJ erred in finding that Plaintiff's mental impairments were non-severe; whether the ALJ applied the wrong legal standard in finding that Plaintiff was not disabled; and whether the ALJ erred in applying this Circuit's credibility/pain standard.  Doc. 17.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such

---

[1] The supplemental hearing was held so that Plaintiff could testify because she did not appear at the first hearing.  Plaintiff's counsel was present at both hearings.

[2] *See* 42 U.S.C. § 405(g) (2000).

relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous

---

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from

---

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

5

exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### A. Hearing Testimony

Plaintiff was 45 years old at the time of the supplemental hearing. She testified that she has a GED and a valid drivers license.  She married at age 17 and has no work history.  She testified that her RA makes it hard to move around and that she wakes up

---

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] See id.

in pain every morning. She sees a rheumatologist about every three months and takes Enbrel shots for RA. She has been referred to a pain clinic but cannot afford to go. She testified that her rheumatologist also diagnosed her with fibromyalgia, and she has trouble walking, sleeping, and can't stand on her feet for long.

Plaintiff testified that she sees a doctor at the Dixie County Health Department for migraine headaches. She goes to Meridian for severe clinical depression that developed a year or two after her RA diagnosis. She takes Valium for nerves and anxiety, which also helps for muscle spasms. She takes Effexor for depression but does not feel it is very effective. Plaintiff estimated that she has been seen at Meridian about six times since 2010. Although she guessed that the Effexor worked, she still felt depressed. She testified that she had taken Valium off and on for 10 or 12 years.

Plaintiff testified that most of her time is spent lying down or sitting with her feet up because they hurt. Her husband is disabled, and they both do household chores when they can. She can do laundry and vacuum once in a while. She watches movies on TV and is able to follow along. She enjoys reading history. Plaintiff testified that she had not been to church in over a year. Her husband does the grocery shopping, though sometimes they both go and use electric carts. She only drives a car if it is an emergency.

Plaintiff testified that if she were offered a desk job addressing labels she would not be able to do it because she could not sit for very long and she can't use her hands for long because they hurt. She testified that it would take her at least two hours in the

morning before work just to "unkink". She testified she did not think she could work an 8-hour day because of her pain and anxiety. She testified that she is very nervous and has trouble with details and finds them "overwhelming". She is extremely depressed and angry over things like her curtains being dusty. She carries a cane and wore a knee brace at the hearing. She testified that her fingers are starting to curl due to the RA. R. 438-509.

Dr. Robert Karsh, a rheumatology specialist, testified that based on his review of the medical records Plaintiff's RA, carpal tunnel syndrome, peripheral neuropathy, and vasculitis did not meet any listing. R. 472-73.

The VE testified that a person of Plaintiff's age and education with no work experience, with an ability to do simple, unskilled work, and with the RFC for sedentary work with exertional limitations described by the ALJ could perform the representative jobs of surveillance system monitor and call-out operator. R. 480-83.

**B. Medical Records Relating to Mental Health**

Plaintiff's arguments on appeal focus primarily on the ALJ's determination that she did not have a severe mental impairment. The medical records pertinent to such claims may be summarized as follows. In May and June 2010, Plaintiff attended the UF Chronic Pain Clinic. Examination showed a linear, goal-directed thought process, intact attention, concentration and memory, intact insight and judgment, a good mood, and a congruent, euthymic affect with full range. R. 297, 344.

The State agency psychologist, Steven Wise, Psy.D, reviewed Plaintiff's medical

records in August 2010 and concluded that her mental impairments were not severe. R. 363-75. In September 2010, Plaintiff reported to Dr. Lance I. Chodosh that she was depressed but not receiving any mental health care. R. 377. She was able to generally perform her activities of daily living slowly and with some difficulty. *Id*.

Plaintiff had a psychiatric evaluation at Meridian Behavioral Healthcare in May 2011. R. 410-14. A nurse practitioner assessed Plaintiff with major depressive disorder and anxiety disorder. R. 413-14. Plaintiff was prescribed valium, and also was recommended to take Effexor and Buspar. R. 413.

In June 2011, Plaintiff's mood was depressed and anxious and she complained of racing thoughts, but she had fair insight and judgment. R. 408. In July 2011, her mood was anxious but her affect was congruent, and her insight and judgment were "OK". R. 405.

In August 2011, her mood was euthymic, her affect congruent, and she had made progress rated as seven out of ten. R. 403. In October 2011, Plaintiff's mood was irritable and depressed. Her affect was blunted, but her thought process was logical and organized and insight and judgment were "OK". R. 401.

In January 2012, Plaintiff's progress was assessed as seven out of ten. R. 398. Her appearance was good, her manner was appropriate, she had normal motor behavior and normal speech. Her productivity was normal and goal directed, her mood was less irritable and her affect was congruent with a full range. Her thought process was logical, organized, and she had no psychosis. Insight and judgment were "OK".

She was assessed as stable on medication. *Id*.

In May 2012, Plaintiff's mental assessment was unremarkable and she was continued on her medications. R. 455. In August 2012, Plaintiff reported she felt "OK" and she was rated as eight on a scale of ten in progress. R. 451. Her mood was anxious but her speech, though process and content, insight and motor behavior were all normal. *Id*.

## C. ALJ's Decision

In determining that Plaintiff's mental impairments were nonsevere, the ALJ considered the four broad functional areas known as the "Paragraph B" criteria. In activities of daily living, the ALJ found mild limitation based on Plaintiff's statements that she cared for her personal needs and performed housework. The ALJ found only mild limitation in social functioning, based on Plaintiff's ability to relate adequately to her spouse, family, and healthcare providers. The ALJ found only mild limitation in concentration, persistence, or pace, noting that Plaintiff was able to watch television and read for extended periods. In the fourth area, Plaintiff had experienced no episodes of decompensation. Based on his findings, the ALJ's RFC included no non-exertional limitations stemming from mental health impairments. R. 15-16.

## IV. DISCUSSION

### A. Assessment of Mental Impairments

Plaintiff alleges that after erroneously finding that her mental health impairments were nonsevere, the ALJ failed to consider her impairments in combination. R. 17.

An impairment or combination of impairments is severe at Step Two of the sequential evaluation if it significantly limits one's physical or mental ability to do basic work activities.[22] To be considered "severe" a medical condition must constitute more than a "deviation from purely medical standards of bodily perfection or normality."[23] Thus, a diagnosis of a mental impairment does not necessarily compel the conclusion that the condition is disabling.[24] Although the threshold for meeting the definition of a "severe impairment" at Step Two is low, the burden is, nonetheless, on the Plaintiff to provide evidence demonstrating the disabling impact of the mental impairments.[25] The ALJ is required to evaluate Plaintiff's mental impairments in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[26] If the degree of limitation in the first three functional areas is rated as "none" or "mild" and "none" in the fourth area, the ALJ generally concludes the mental impairment is not severe.[27]

---

[22] 20 C.F.R. § 404.1520(c).

[23] McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[24] 20 C.F.R. §§ 404.1520(c), 416.920(c); see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[t]here must be a showing of related functional loss" for a psychological disorder to be considered disabling).

[25] Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[26] 20 C.F.R. § 404.1520a(c)(3).

[27] 20 C.F.R. § 404.1520a(d)(1). See also Cuthbert v. Astrue, 303 F. App'x 697, 699 (11th Cir. 2008) (per curiam).

Here, the ALJ specifically found that the medical evidence failed to show any severe mental impairment. Plaintiff makes no persuasive argument to the contrary. Specifically, Plaintiff points to nothing in her medical records that counters the ALJ's explicit findings that her mental impairments did not have a disabling impact with respect to her functional abilities. Plaintiff's conclusional assertion that the ALJ erred is insufficient to carry even the relatively low burden of establishing the existence of a severe mental impairment at Step Two. The ALJ considered and discussed all of the relevant evidence in determining that Plaintiff did not have a severe mental impairment, and the ALJ's conclusion that Plaintiff's mental impairments were not severe is supported by substantial evidence, as summarized above.

"When a claimant has alleged [multiple impairments], a claim for [SSI] may lie even though none of the impairments, considered individually, is disabling.[28] The ALJ must "make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."[29] The Eleventh Circuit has repeatedly held that an ALJ's finding regarding a claimant's "impairment or combination of impairments" establishes that the ALJ has considered the impact of the combined impairments.[30]

---

[28] *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

[29] *Id*.

[30] *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002); *Jones v. Dep't of Health & Human Servs*., 941 F.2d 1529, 1533 (11th Cir. 1991); *Wheeler v. Heckler*, 784

In this case, the ALJ clearly considered Plaintiff's physical impairments in combination. This is evidenced by the ALJ's statement during step three of the sequential analysis that Plaintiff "does not have an impairment or a combination of impairments." As the Eleventh Circuit explained in *Wilson* this statement is sufficient to establish that the ALJ has considered the combined impact of all impairments. 284 F.3d at 1224-25. As explained above, the record supports a conclusion that the ALJ did not err determining that Plaintiff's mental impairment is non-severe. As the Commissioner contends, Plaintiff has failed to identify any listing that her impairments would meet or equal, either alone or in combination, at step three.

B. <u>Whether the ALJ Applied Incorrect Legal Standard</u>

The ALJ did not fully credit Plaintiff's claims regarding the disabling effects of her impairments, and in doing so he observed that Plaintiff's ability to perform her activities of daily living was "inconsistent with a complete inability to work." R. 20. Plaintiff contends that in doing so, the ALJ applied the wrong legal standard to the disability determination. Doc. 17.

The ALJ's decision recited the correct statutory definition of disability. R. 12 ("Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable impairment or combination of impairments[.]") The ALJ then analyzed each step of the sequential evaluation, with thorough discussion

---

F.2d 1073 (11th Cir. 1986).

13

of the evidence.  *Id*. at 14-22.  It is apparent that the ALJ articulated and applied the correct disability standard.  The statement relied on by Plaintiff – "inconsistent with a complete inability to work" – was a comment on Plaintiff's allegations of disabling limitations as weighed against the evidence of her functional abilities.  *See* R. 20.  The statement provides no basis for concluding that the ALJ applied the incorrect legal standard to his overall disability determination.

## C. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff alleges that the ALJ failed to correctly apply the 11th Circuit's pain/credibilty standard to her subjective complaints.  Plaintiff asserts that the ALJ determined Plaintiff's RFC and then found that her testimony was not credible because it did not match the ALJ's "preconception of what it should be."  R. 17.

A claimant may establish his disability through his own testimony of pain or other subjective symptoms.[31]  The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard."[32] Under that test, evidence of an underlying medical condition must exist.[33]  If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying

---

[31] See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote v. Chater, 67 F.3d 1553, 1560–61 (11th Cir.1995).

[32] See Foote, 67 F.3d at 1560.

[33] Id.

medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms.[34] A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.[35]

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.[36] In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors.[37] The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms.[38] The ALJ then will examine the claimant's statements

---

[34] Id.

[35] Id. at 1561.

[36] 20 C.F.R. § 404.1529(c)(1).

[37] Id. § 404.1529(c)(1)-(2).

[38] Id. § 404.1529(c)(3).

regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record.[39]

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding.[40] While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole.[41] The ALJ's articulated reasons must also be supported by substantial evidence.[42] The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence.[43] The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is critical to the outcome of the case.[44]

The ALJ found that while Plaintiff's impairments could reasonably be expected to

---

[39] Id. § 404.1529(c)(4).

[40] See Foote, 67 F.3d at 1561–62.

[41] Id. at 1562.

[42] Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir.1991).

[43] Foote, 67 F.3d at 1562.

[44] Id.

cause the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that these statements were inconsistent with the ability to perform a limited range of sedentary work.  R. 18. In assessing Plaintiff's credibility, the ALJ considered Plaintiff's allegations in relation to the medical evidence, and observed that Plaintiff's rheumatoid arthritis pain was controlled with medication, recent x-rays showed no active rheumatoid arthritis, and Plaintiff's rheumatologist's last note in October 2010 indicated that her arthritis was fairly well controlled.  R. 20.   He observed that Plaintiff's arthritis had a good response to Enbrel, and had not required any additional treatment.  *Id*.  Her osteopenia was stable with calcium supplements and vitamin D.  *Id*.  He concluded that the lack of physical findings and the good response to the medication regime suggest that Plaintiff's symptoms are not as limiting as she alleges.  *Id*.

In making his credibility assessment, the ALJ properly considered Plaintiff's testimony regarding her activities of daily living.  He noted that while Plaintiff testified that she spends most of her day in bed, there was no medical record showing that any treating or examining physician had advised Plaintiff that staying in bed was necessary.  He concluded that the statement was inconsistent with her reported daily activities.  *Id*.

On this record, the Court concludes that the ALJ's credibility finding was consistent with prevailing law and was supported by specifically identified substantial evidence in the form of Plaintiff's testimony regarding her activities of daily living and the absence of any medical record supporting her claim that she needed to spend most

of her day in bed. Thus, there is no reason for the Court to disturb the ALJ's credibility finding.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida this 10th day of August 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**